UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

VERNON STEWART POLK,
     Petitioner,

vs.                            Case No.:  3:19cv3905/RV/EMT

MARK S. INCH,
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner Vernon Stewart Polk (Polk) filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF No. 1).  Respondent (the State) filed an answer and relevant portions of the state court record (ECF No. 13 (answer); ECF No. 14 (state court record)).  Polk filed a reply (ECF No. 25).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B)–(C) and Fed. R. Civ. P. 72(b).  After careful consideration of the issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that Polk is not entitled to federal habeas relief.

I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 14).[1]  Polk was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2012-CF-3475, with one count of attempted second degree murder with a weapon (Count 1), one count of aggravated battery with a firearm (Count 2), and one count of possession of a firearm by a convicted felon (Count 3) (ECF No. 14-1 at 21 (amended information)).  Count 3 was severed for trial.  A jury trial on Counts 1 and 2 was held on July 26, 2013, at the conclusion of which the jury found Polk guilty of attempted second degree murder, with specific findings that Polk committed the offense with a weapon, that the weapon was a firearm, and that Polk actually possessed and discharged the firearm during commission of the attempted second degree murder (ECF No. 14-1 at 147–48 (verdict); ECF No. 11-1 at 342–458 (transcript of jury trial)).  As to Count 2, the jury found Polk guilty of aggravated battery with a firearm, with specific findings that the weapon he used was a firearm, and that Polk actually possessed and discharged the firearm during commission of the aggravated battery (*id.*).

The court held a sentencing hearing on October 16, 2013 (ECF No. 14-1 at 150–61 (transcript of sentencing)).  The State announced a nolle prosequendum as

---

[1] Citations to the state court record and the parties' pleadings refer to the document numbers and page numbers assigned by the court's electronic filing system.

to Count 3 (*id.*).  The trial court adjudicated Polk guilty on Counts 1 and 2 and sentenced him, as a prison releasee reoffender, to life in prison on Count 1, with no eligibility for parole or any other form of early release, and with 464 days of jail time credit (ECF No. 14-1 at 188–97 (judgment and sentence); ECF No. 14-1 at 150–61 (transcript of sentencing)).  The court sentenced Polk to a mandatory term of twenty-five years in prison on Count 2, to run concurrently with the sentence on Count 1 (*id.*).

Polk appealed the judgment and sentence to the Florida First District Court of Appeal (First DCA), Case No. 1D13-5041.  Polk's counsel filed an *Anders*[2] brief, asserting that counsel was unable to argue in good faith that reversible error occurred in the trial court  (ECF No. 14-2 (*Anders* brief)).  Polk filed a pro se initial brief asserting that two errors occurred in the trial proceedings:  (1) the court failed to affix his social security number to the written judgment; and (2) there was insufficient evidence to support the conviction for aggravated battery (Count 2) because there was no evidence that Polk intentionally cause bodily harm to the victim (ECF No. 14-3 (pro se initial brief)).  On July 23, 2014, the First DCA affirmed the conviction and sentence per curiam without written opinion (ECF No. 14-4 at 2 (decision)).  *Polk v. State*, 147 So. 3d 987 (Fla. 1st DCA 2014) (Table). The mandate issued August 19, 2014 (*id.* at 4 (mandate)).

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

On July 24, 2015, Polk filed a motion to correct illegal sentence in the trial court, pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure (*see* ECF No. 13 at 4).  The trial court granted the motion and corrected the judgment and sentence to reflect that Polk's sentence on Count 1 was a mandatory term of thirty years in prison, and his sentence on Count 2 was a mandatory terms of twenty years in prison, to run concurrently with the sentence on Count 1 and with presentence jail credit of 464 days on both Counts (ECF No. 14-7 at 21–29 (corrected judgment and sentence)).

On June 16, 2016, Polk filed a motion for post-conviction relief in the state circuit court, under Rule 3.850 of the Florida Rules of Criminal Procedure (ECF No. 14-6 (Rule 3.850 motion)).  The circuit court summarily denied the Rule 3.850 motion in an order rendered on August 23, 2017 (ECF No. 14-7 (order and attachments)).  Polk appealed the decision to the First DCA, Case No. 1D17-4195. On January 11, 2018, the First DCA affirmed the circuit court's decision per curiam without written opinion (ECF No. 14-8 (decision)).  *Polk v. State*, 253 So. 3d 1076 (Fla. 1st DCA 2018) (Table).   The mandate issued March 19, 2018 (ECF No. 10) (mandate)).

On October 4, 2018, Polk filed a petition for writ of habeas corpus in the First DCA, Case No. 1D18-4344 (ECF No. 14-12 (habeas petition and attachments)). Polk subsequently filed an amended petition (ECF No. 14-13 (amended habeas

petition)).  On October 3, 2019, the First DCA dismissed the petition, pursuant to *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (ECF No. 14-4 (decision)).  *Polk v. State*, 279 So. 3d 882 (Fla. 1st DCA 2019) (Mem).

Polk filed his federal habeas petition on October 25, 2019 (ECF No. 1).

## II.    STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3]  Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding"). "The question under AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473–74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under

§ 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S.

at 102.  The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete
> bar on federal-court relitigation of claims already rejected in state
> proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333,
> 135 L. Ed. 2d 827 (1996) (discussing AEDPA's "modified res judicata
> rule" under § 2244).  It preserves authority to issue the writ in cases
> where there is no possibility fairminded jurists could disagree that the
> state court's decision conflicts with this Court's precedents.  It goes no
> further.  Section 2254(d) reflects the view that habeas corpus is a "guard
> against extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal. *Jackson v.
> Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560
> (1979) (Stevens, J., concurring in judgment).  As a condition for
> obtaining habeas corpus from a federal court, a state prisoner must
> show that the state court's ruling on the claim being presented in federal
> court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility
> for fairminded disagreement.

*Richter*, 562 U.S. at 102–03 (emphasis added).

A federal court may conduct an independent review of the merits of a

petitioner's claim only if it first finds that the petitioner satisfied § 2254(d).  *See*

*Panetti v. Quarterman*, 551 U.S. 930, 954 (2007).  Even then, the petitioner must

show that he is in custody "in violation of the Constitution or laws and treaties of the

United States," *see* 28 U.S.C. § 2254(a), and that the constitutional error resulted in

"actual prejudice," meaning, the error "had a substantial and injurious effect or

influence in determining the jury's verdict," *see Brecht v. Abrahamson*, 507 U.S.

619, 637 (1993) (internal quotation marks and citation omitted).

## III.    POLK'S CLAIMS

    **A.    Ground One: "Trial counsel rendered ineffective assistance when he allowed juror Cynthia Dickens to serve on the Defendant's jury when she had been successfully stricken for cause, in violation of the 5th, 6th, and 14th Amendments of the United States Constitution."**

In Polk's reply, he concedes he is not entitled to relief on this claim and

expressly withdraws it from the court's consideration (ECF No. 25 at 5).[4]

    **B.    Ground Two: "Trial counsel rendered ineffective assistance when he failed to object to the erroneous lesser included offense jury instruction for aggravated battery with a firearm, in violation of the 5th, 6th, and 14th Amendments of the United States Constitution."**

Polk alleges defense counsel was ineffective for failing to object to the trial

court's jury instructions on the aggravated battery with a firearm charge (Count 2)

(ECF No. 1 at 7–8).  Polk asserts that the only Category One lesser included offenses

of aggravated battery with a firearm are felony battery and battery (*id.*).[5]  Polk

alleges the trial properly instructed the jury that battery was a lesser included offense,

---

[4] In the Rule 3.850 proceeding, the state court rejected this claim on the ground that the record evidence demonstrated that Ms. Dickens did not actually serve on the jury, and Polk conceded this fact (*see* ECF No. 14-7 at 4–5).

[5] Felony battery is a Category One lesser included offense only if the defendant is charged with the element of intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement to the victim during commission of the battery.  *See* Fla. Standard Jury Instructions in Crim. Cases 8.4.  Polk was not charged with this element; instead he was charged with the element of using a deadly weapon during commission of the battery (*see* ECF No. 14-1 at 21 (amended information)).

but the court improperly instructed the jury that aggravated battery with a deadly weapon was also a lesser included offense (*id.*). Polk alleges the jury was confused by the jury instructions for aggravated battery with a firearm, as evidenced by their posing a question to the court, "Need a layman explanation of aggravated battery and battery" (*id.*). Polk asserts the trial court responded to the jury's question by informing them that they must rely on the instructions they were provided (*id.*). Polk alleges if the jury had not been instructed that aggravated battery with a deadly weapon was a lesser included offense, the jury would have exercised their pardon power and found him guilty of battery, the only proper lesser included offense (*id.*).

The State concedes Polk exhausted this claim in the state courts by presenting it in his Rule 3.850 motion (*see* ECF No. 13 at 8). The State concedes that aggravated battery with a deadly weapon was not a proper option for the jury (*id.* at 18–19). The State contends Polk has not demonstrated he was prejudiced by defense counsel's failure to object to the jury instruction, because the loss of the opportunity for a jury pardon does not satisfy the prejudice component of the federal standard for a successful ineffective assistance of counsel (IAC) claim (*id.* at 19).

### 1.    Clearly Established Federal Law

To succeed on an IAC claim, a petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The prejudice prong requires

the petitioner to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In evaluating prejudice, according to *Strickland*, "a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Id.* In other words, "[a] defendant has no entitlement to the luck of a lawless decisionmaker." *Id.* at 695.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

## 2.    Federal Review of State Court Decision

Polk presented Ground Two in his amended Rule 3.850 motion (ECF No. 14-6 at 6–8). The state circuit court adjudicated the claim as follows:

> As a general principle, to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that: l) counsel's performance was deficient; and 2) there is a reasonable probability that the outcome of the proceeding would have been different had counsel not been deficient. See Torres-Arboleda v. Dugger, 636 So. 2d 1321, 1324 (Fla. 1994) (construing Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011 ). Thus, there is a two-part inquiry: Counsel's performance and prejudice.
>
> Defendant bears the burden of showing that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. There is a "wide range of professionally competent assistance" that passes this constitutional muster. Bertolotti v. State, 534 So. 2d 386, 387 (Fla. 1988). Furthermore, there is a "strong presumption that counsel has rendered adequate assistance and made all significant decisions in the exercise of **reasonable professional judgment** with the burden on claimant to show otherwise." Blanco v. Wainwright, 507 So. 2d 1377, 1381 (Fla. 1987), quoted in Bertolotti, 534 So. 2d at 387 (emphasis added).
>
> Even if Defendant's counsel fell below such standards, Defendant would not automatically prevail. Defendant must also meet the prejudice prong of the Strickland test.[FN 4] For Defendant to prevail on this point, he must demonstrate that there is a "reasonable probability that, but for the deficiency, the result of the proceeding

would have been different." Spencer, 842 So. 2d at 61. Moreover, a court considering a claim of ineffective assistance of counsel need not determine whether counsel's performance was deficient **when it is clear the alleged deficiency was not prejudicial**. See Torres-Arboleda, 636 So. 2d at 1324 (emphasis added). In other words, Defendant must demonstrate a "probability sufficient to undermine confidence in the outcome." Spencer, 842 So. 2d at 61. With these principles in mind, the Court will address Defendant's claims in the order in which they were presented.

> [FN 4: There is no prescribed sequence for the Strickland analysis, but if a defendant does not carry his burden on one prong, then the Court need not consider the other prong. Strickland, 466 U.S. at 697.]

. . . .

Defendant [ ] alleges that his counsel was ineffective for failing to make an objection when the trial court instructed the jury on aggravated battery with a deadly weapon as a lesser included offense of battery with a firearm. Defendant contends that aggravated battery with a deadly weapon is not a proper lesser included offense in his case. Defendant asserts that if the jury had been properly instructed that there is a reasonable probability the jury would have exercised its inherent pardon power and entered a guilty verdict as to battery, therefore rendering a different outcome.

Initially, the Court notes that the jury was not only given the option of finding Defendant guilty of the offense of aggravated battery with a deadly weapon, but was also given the opportunity to find Defendant guilty of battery, as a lesser included offense.[FN 7] Despite these options, the jury found Defendant guilty as charged of aggravated battery with a firearm.[FN 8] Accordingly, Defendant is unable to show that the jury would have found him guilty of battery as it did not select that option. Additionally, "as a matter of law, the possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland." Sanders v. State, 946 So. 2d 953, 960 (Fla. 2006). Consequently, Defendant has failed to show proper prejudice to receive relief. Defendant is not entitled to relief as to this claim.

[FN 7:  <u>See</u> Attachment 1, Verdict.  <u>See</u> <u>also</u> Attachment 6, Transcript, Jury Trial, Vol. II, pp. 196–98.]

[FN 8:  <u>See</u> Attachment 1, Verdict.]

(ECF No. 14-7 at 3–6).  The First DCA affirmed the circuit court's decision in a one-word decision, "Affirmed."  *Polk v. State*, 253 So. 3d 1076 (Fla. 1st DCA 2018) (Table).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d).  *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

Count 2 of the amended information charged that Polk committed aggravated battery with a firearm upon Antoinette Lakeda Hunter by actually and intentionally touching or striking her against her will, or by intentionally causing bodily harm to her, and "in committing said battery did carry, actually possess and discharge a firearm, to-wit:  a handgun" in violation of Fla. Stat. § 784.045(1)(a)(2) (defining aggravated battery on the "use of a deadly weapon" theory) and Fla. Stat. § 775.087(2) (imposing an enhanced sentence if the defendant actually possessed and discharged a firearm during commission of the offense) (ECF No. 14-1 at 21).

The relevant jury instructions and verdict form, which are part of the state court record, gave the jury four options with respect to the aggravated battery with a firearm count: (1) finding Polk guilty of aggravated battery with the firearm, (2) finding Polk guilty of aggravated battery with a deadly weapon as a lesser included offense, (3) finding Polk guilty of battery as a lesser included offense, and (4) finding Polk not guilty (ECF No. 14-7 at 9 (verdict form), 40–41, 47 (written jury instructions), 57–59 (oral jury instructions)). Although the jury instructions and verdict form characterized aggravated battery with a deadly weapon as a "lesser included offense," they simply gave the jury the option of finding Polk guilty of aggravated battery without the sentence enhancement.

The state court's rejection of Polk's claim was consistent with *Strickland*'s prejudice standard. As discussed *supra*, under *Strickland*, a court must presume that the jury acted according to the law:

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies [sic] of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

466 U.S. at 694–95.

Under Florida law, a jury must "render a true verdict according to the law and the evidence" and, therefore, a jury is permitted to convict of a lesser included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt." *Sanders v. State*, 946 So. 3d 953, 958 (2006); *see Williams v. Singletary*, 78 F.3d 1510, 1515 (11th Cir. 1996) (stating that a federal habeas court is bound by decisions of the relevant state supreme court when addressing issues of state law). *Strickland* requires that this court assume that the jury in Polk's trial followed this rule of law. *See Strickland*, 466 U.S. at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.").[6]

The jury in Polk's trial concluded that the evidence against him proved beyond a reasonable doubt that he committed aggravated battery with a firearm, that is, that he actually and intentionally touched or struck Ms. Hunter her against her will, or intentionally caused bodily harm to her, and in committing the battery, Polk carried, actually possessed, and discharged a firearm. Even if the jury had been instructed only on battery as a lesser included offense (and not aggravated battery without the firearm enhancement), the jury would not have been permitted to convict Polk of

---

[6] Polk does not claim that there was insufficient evidence to support his conviction for aggravated battery with a firearm.

that offense, as Polk alleges, because it had concluded that the evidence established he was guilty of the greater offense.

Polk's assertion of prejudice depends, as he admits, on the possibility that "the jury would have exercised their pardon power and entered a guilty verdict as to battery" (*see* ECF No. 1 at 8). Polk's jury had that option, but they rejected it. Further, as previously discussed, Polk is not entitled to the "luck of a lawless decisionmaker," which is essentially all that he seeks, so the state court reasonably concluded that he had no recourse under *Strickland*.

Because Polk failed to show a reasonable probability that the result of his trial would have been different had defense counsel objected to the characterization of aggravated battery with a deadly weapon as a "lesser included offense" of Count 2, the state court reasonably determined that *Strickland*'s prejudice prong was not satisfied. *See Strickland*, 466 U.S. at 694; *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). Polk is not entitled to habeas relief on Ground Two.

**C.    Ground Three:  "The trial court committed fundamental error by failing to instruct the jury with the required necessary category one lesser included offense of attempted voluntary manslaughter to Count One in violation of the 5th, 6th, and 14th Amendments of the United States Constitution."**

Polk alleges the trial court committed fundamental error by failing to instruct the jury on the Category One lesser included offense of attempted voluntary

manslaughter on Count 1 (ECF No. 1 at 9–11).  Polk alleges under Florida law, the

failure to instruct the jury on a Category One lesser included offense is reversible

error requiring a new trial (*id.* at 9–10).  Polk alleges during the charge conference,

the trial court mentioned attempted voluntary manslaughter as a lesser included

offense of attempted second degree murder, but it was not included in the jury

instructions (*id.* at 10).  Polk contends the trial court's failure to instruct the jury on

attempted voluntary manslaughter deprived him of his rights to due process and a

fundamentally fair trial under the Fifth, Sixth, and Fourteenth Amendments (*id.* at

10–11).

Polk concedes he did not present this claim on direct appeal of his conviction

(ECF No. 1 at 11).  He explains that his appellate counsel filed an *Anders* brief and

failed to raise the issue (*id.*).  Polk states he presented Ground Three to the First

DCA in his state habeas petition (*id.*).

The State contends Ground Three is procedurally defaulted (ECF No. 13 at 8,

19).  The State agrees that Polk presented his claim in his state habeas petition, but

the State asserts the First DCA dismissed the petition as unauthorized pursuant to a

state procedural rule that a habeas corpus petition may not be used to raise issue that

should have been raised on direct appeal (*id.* at 8–9).  The State argues Polk should

have raised his claim of trial court error on direct appeal (*id.* at 8).  Notwithstanding

the procedural default, the State contends Ground Three is without merit, because at

the time of Polk's commission of the offenses in 2012 and his trial in 2013, Florida's standard jury instructions did not list attempted voluntary manslaughter as a Category One lesser included offense (*id.* at 19–20).

In Polk's reply, he contends the First DCA had an obligation to recognize the trial court's fundamental error on direct appeal, because, the First DCA was required to conduct a *de novo* review of the trial record upon counsel's filing an *Anders* brief (ECF No. 25 at 8–14).  Polk contends the First DCA then had a second opportunity to address the issue in the state habeas action but failed to do so (*id.*).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). To exhaust state remedies, the petitioner must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review.  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  A petitioner does not fairly present a claim "where the claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor."  *Id.* at 346 (internal quotation marks and citation omitted).

There is also a "procedural default" aspect of exhaustion. Such procedural default can arise in two ways. *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). First, if the petitioner **raises** a claim to the state court, and the state court **correctly applies a procedural default principle of state law** to arrive at the conclusion that the petitioner's federal claim is barred, the federal court must respect the procedural bar. *Id.* at 1302 (citations omitted). Second, if the petitioner simply **never raised** a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal. *Id.* at 1303.

In the first instance, the federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Id.*

Here, it is undisputed that Polk presented Ground Three to the First DCA in his "Amended Petition for Writ of Habeas Corpus Alleging a Manifest Injustice" (ECF No. 14-13). Polk argued that habeas corpus was the proper remedy to prevent a manifest injustice even if the error was one that could have been corrected by filing a post-conviction motion (*id.* at 2). Polk contended that the trial court's failure to

give the attempted voluntary manslaughter instruction (also referred to as attempted manslaughter by act instruction) constituted fundamental error (*id.*).  He argued that even though his appellate counsel did not identify this issue in his *Anders* brief, and Polk himself did not identify it in his pro se initial brief, the appellate court should have discovered the error because it was apparent on the face of the record (*id.* at 5, 8).  Polk argued that the First DCA should "reconsider and correct its erroneous ruling made in the earlier appeal" because his appellate counsel as well as the First DCA "missed" the error (*id.* at 9–10).

The First DCA dismissed Polk's habeas petition on the authority of *Baker v. State*, 878 So. 2d 1236 (Fla. 2004) (ECF No. 14-14).  In *Baker*, the Florida Supreme Court held that post-conviction relief for individuals convicted of noncapital crimes in Florida must ordinarily be obtained through a Rule 3.850 motion in the sentencing court, rather than through a habeas corpus petition.  878 So. 2d at 1245.   The court announced that it would dismiss, as unauthorized, habeas corpus petitions filed by noncapital defendants that sought the kind of collateral post-conviction relief available through a motion filed in the sentencing court, and which (1) would be untimely if considered as a motion for postconviction relief under Rule 3.850, (2) raise claims that could have been raised at trial or, if properly preserved, on direct appeal of the judgment and sentence, or (3) would be considered a second or successive motion under Rule 3.850 that either fails to allege new or different

grounds for relief, or alleges new or different grounds for relief that were known or should have been known at the time the first motion was filed. *Id.* at 1245–46.

The First's DCA disposition of Polk's petition was not a merits adjudication, rather, it was based on a firmly established and regularly state procedural rule announced in *Baker*. Because Polk did not present his claim of trial court error in a procedural context in which the merits would be considered, he failed to satisfy the federal exhaustion requirement. *See, e.g., Caceres-Abreu v. Sec'y, Dep't of Corr.*, No. 19-12829-B, 2020 WL 4346763, at *1 (11th Cir. Feb. 21, 2020) (holding that reasonable jurists would not debate whether petitioner failed to satisfy the exhaustion requirement, where he presented his federal claims to the Florida state courts in a habeas petition instead of a Rule 3.850 motion); *Cargile v. Sec'y, Dep't of Corr.*, 349 F. App'x 505, 507–08 (11th Cir. 2009) (petitioner failed to exhaust state remedies for his claim challenging venue, and thus procedurally defaulted the claim, where he presented it in state habeas petitions, and Florida courts dismissed the petitions on the ground that seeking collateral relief in habeas corpus was not authorized).

To overcome a procedural default, the petitioner must show cause for the default and prejudice resulting therefrom, or that the federal court's failure to reach the merits of the claim would result in a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th

Cir. 1990), *rev'd on other grounds*, 498 U.S. 308 (1991). "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.* The *Schlup* court explained:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

Here, Polk does not allege cause for his procedural default.[7] Further, he has not alleged the existence of newly discovered evidence that would support a

---

[7] Even liberally construing Polk's allegations, they do not establish that his procedural default of Ground Three was caused by ineffective assistance of appellate counsel (IAAC). At most, Polk's allegations suggest negligent conduct on the part of appellate counsel. Further, in order to rely on IAAC as cause for a procedural default, the petitioner must first present the IAAC claim to the state courts. *Murray*, 477 U.S. at 488; *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989). In Florida, a claim of IAAC is actionable in a petition for writ of habeas corpus filed in the appellate court to which the appeal was taken. *See* Fla. R. App. P. 9.141(d); *Davis v. State*, 875 So. 2d 359,

colorable claim of actual innocence.  Therefore, Ground Three is procedurally barred from federal review.

IV.    CONCLUSION

Polk abandoned Ground One.  He failed satisfy § 2254(d) with respect to the state court's adjudication of the merits of Ground Two.  And Polk procedurally defaulted Ground Three.  Therefore, Polk's § 2254 petition should be denied.

V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could

372 (Fla. 2003).  Here, Polk did not present an IAAC claim in his state habeas petition, and the First DCA did not construe his petition as asserting such a claim.  Therefore, Polk cannot rely on IAAC as cause to excuse his procedural default of Ground Three.

disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (citing *Miller-El*, 537 U.S. at 327). Polk cannot make that showing with respect to any of his claims. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

3.    That the clerk of court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida, this 24th day of May 2021.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  An objecting party must serve a copy of the objections on all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**